CLEVELAND TRUST CO., EXR., *v.* TAX COMMISSION OF OHIO ET AL.

324

■■■■■■

(Decided November 19, 1928.)

*Messrs. Snyder, Henry, Thomsen, Ford & Seagrave,* for plaintiff in error.

*Mr. Carleton S. Dargusch,* for defendants in error.

VICKERY, J. This cause comes into this court on a petition in error to the common pleas court of Cuyahoga county. The cause originated in the probate court, where it was sought to exempt a large part of the estate of the late S. P. Fenn, about $1,000,000 of which was left to trustees in the aid and behalf of charity, but the probate court found that that part of the estate in question was subject to an inheritance tax, which was determined to amount to $127,840.86. It was claimed in the probate court, and the appropriate proceedings were taken to raise this question, that, inasmuch as this part of the estate was left to charities, and, as it was asserted, to public charities, it was exempt from the inheritance tax, it being conceded by the state taxing authorities that this part was exempt from the general taxes because it was undoubtedly left for charitable purposes. But the probate court overruled the claim of the executors and assessed the inheritance tax against the estate. This was carried

on error to the common pleas court, and in that court a full hearing was had, and, after due consideration, the common pleas court affirmed the judgment of the probate court, to which judgment error is prosecuted to this court, and the question, and the only question, that is of any importance to be decided by this court, is: Was this part of the estate left to a *public* charity, or *public* charities?

It is claimed by the state tax commission that, even if the Young Men's Christian Association and the Young Women's Christian Association and the Old Stone Church, the three main beneficiaries under this bequest, were public charities, and the writer of this opinion would have a great doubt as to whether or not they come within the category of public charities, still the sum bequeathed would not be exempt from the state inheritance tax, as will more fully appear hereafter.

The will of Mr. Fenn is a very well drawn document, and very long and explicit, and he provides how the trustees to manage this bequest are to be appointed. A board of five trustees is to be appointed, the method of appointing them being clearly marked out and designated in the will, and, as we understand it, such trustees have been designated by those authorized under the will to make the appointment; and of the fact that a body or an institution formed by these five trustees is organized in accordance with law, so as to be enabled to handle bequests, there can be no doubt. This will shows that Mr. Fenn was a public-spirited citizen looking into the future, and he apparently had the utmost trust and confidence in the men that were to be selected for the post of trustees to administer this be-

quest, inasmuch as he did not want to curtail or impair their powers in any way, stating that he was conscious of the trend of the times, and that what was a charity today might not be one tomorrow, and for that reason he gave absolute control and discretion to the trustees to manage this estate in any way they saw fit, provided, only, that it should be used for charitable purposes at all times, and provided, further, that the following be not selected as an object of charity or beneficiary by these trustees: First, a corporation which had stockholders who drew dividends from the corporation; and, second, any beneficiary which was subject to pay an estates tax to the United States government. But outside of these limitations the trustees had discretion to do anything they liked with this fund.

Now, by this generous confidence in his trustees, and the putting of such wide discretion in their power, it seems to this court that the testator, while he undoubtedly provided his estate for charitable purposes, did not limit it to *public* charities. Under the power given to the trustees in this will they might ignore the Old Stone Church, the Young Men's Christian Association, and the Young Women's Christian Association, and devote the trust entirely to what might be a private charity, because there are many private charities in Ohio not subject to the United States estates tax, and the will provides that charities provided for in the will be carried on in the state of Ohio, but not necessarily all of them. There are a great many charities in Ohio which are exempt from taxation under the federal estates tax law, but that does not make them public charities. For example, we will use the same

institution that called forth the decision in the *Paxson case,* which will be referred to hereafter, the Masonic Home at Springfield, Ohio, or the Knights of Pythias Home, or the Elks Home, or the Jewish Orphan Asylum, or any other establishment in Ohio that is for charitable purposes. All of these mentioned are exempt from taxation under the federal estates tax law.

Now, by the various provisions of the will which creates this trust, these trustees in their discretion could select any one or all of these institutions that I have named and make them the beneficiaries, omitting entirely the three that are particularly named in the will, and in that case this fund would be used for private and not public charities. Now, the statute of Ohio, Section 5334, General Code, provides:

"The succession to any property passing to or for the use of the state of Ohio, or to or for the use of a municipal corporation or other political subdivision thereof for exclusively public purposes, or public institutions of learning within the state, or institutions of learning within any state of the United States, * * * or *to or for the use of an institution for purposes only of public charity, carried on in whole or in substantial part within this state,* shall not be subject to the provisions of the preceding sections of this subdivision * * * of this chapter."

It will be noticed from this provision of the Code that where bequests are left to charities, in order to be exempt from the inheritance tax they must be *public* charities. One cannot but wonder whether the time has not come when it would be better that

all institutions, except public institutions, should bear their fair portion of the burden of government, exempting municipalities and schools; and institutions which are supported by taxation entirely, of course, should be exempt, because it would be taxing the same body to keep up these institutions, and would simply make an added expense in collecting the taxes to give them back again; but that reason does not obtain with respect to institutions for charity, and one wonders whether or not the time has not come when institutions that are charitable should not bear their proportion of maintaining the government, but that question is really not involved in this lawsuit, but it is a thought which must be taken into consideration when it is sought to extend and enlarge the power to exempt property from taxation beyond the explicit wording of the statute. Now, the statute exempts from the inheritance tax a charitable institution only where such institution is wholly a *public* charity, and it would not do, especially in the present trend of thought, for a court to legislate and extend the plain, unambiguous wording of the statute.

It is urged in this case that, conceding for the sake of argument that the three main beneficiaries in this will are public charities, if the trustees should undertake to divert this fund to any other use, they could be enjoined. That may or may not be so, but it is aside from the purpose. The question whether this fund is subject to an inheritance tax must be disposed of as of the time of the devolution of the estate—that is, at the death of the testator—and in accordance with the use of the words in the instrument which creates the trust. If the taxes are pay-

able, then they should be collectible. The power of diverting the money to some other use is a matter which should not be taken into consideration by the courts at this state of the proceedings, and has no effect upon the assessment of the inheritance tax. It must be remembered in the instant case that here is very nearly $128,000, which by the inheritance tax goes clearly to the *public*. Without any equivocation, without any doubt, the entire public is benefited by that much swelling of the tax duplicate, and if this sum is remitted, then it must be made up from some other source, and the entire public would be assessed to benefit the three institutions that got the majority of a rich man's estate.

When Mr. Fenn gave his trustees such wide discretion and latitude in selecting a beneficiary within the limits already outlined, he turned this trust of what possibly might have been a public charity, but not necessarily public, into a private charitable use, and then the provisions of this will run squarely up against the statute above cited, as far as being exempt from the inheritance tax is concerned.

It seems to this court that the case made on the pleadings in argument before the court brings it squarely within the case of *Tax Commission of Ohio* v. *Paxson, Admr.*, 118 Ohio St., 36, 160 N. E., 468, decided January 18, 1928, by the Supreme Court of Ohio. The syllabus of that case is as follows:

"A testator devised a trust fund to certain trustees and their successors for charitable purposes, directing that the trustees and their successors should 'be the sole judges as to the persons qualified and entitled to have the benefits of said fund, and the purposes for which said expenditures shall be

made, within the general spirit of the purposes for which this bequest is made.' *Held,* that the succession to such a property is not exempt from the inheritance tax, under Section 5334, General Code.''

This case, we think, settles without any equivocation or doubt the doctrine that should be adopted in the instant case, for, to use the exact words of Judge Allen, in closing the able opinion in that case: ''We see no escape from the conclusion that, under the specific provision of the will of Mrs. Millikan, the executors were empowered to use this money for private charity, however worthy such charity might be, and hence we hold that the judgment of the Court of Appeals as to the exemption of the $20,000 fund must be reversed.''

Under the provisions of Mr. Fenn's will, the trustees have the same power that the trustees had in the *Paxson case,* and there can be no doubt but that in their discretion they might give any or all of this property that they saw fit to a private charity, and it is governed wholly by the statute above cited. It not being wholly for a public charity, it cannot escape the inheritance tax, however it might escape being put upon the general tax duplicate, and, as already stated, there is no reason why the estate of a wealthy man, who seeks to perpetuate his name and memory by donating his estate to charity, should not bear its fair proportion of the burden of maintaining the government. The taxes thus assessed would surely be for a public purpose, as already outlined.

Taking this whole record, and giving careful consideration to the words of Mr. Fenn in the will, and the will must be read and construed in its entirety,

not just in certain portions, but read as an entire document, and, so reading it, it clearly authorizes his trustees as appointed under the will, and their successors, to give this money to any private charity they see fit, providing such a charity does not have stockholders to which it pays dividends, or is not compelled to pay the estates tax to the United States government, and we think, therefore, that the judgment of the probate court and of the common pleas court was right, and the judgment of the common pleas court must and will be affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., concurs in judgment.